UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
UNITED STATES OF AMERICA

        - against -

HECTOR PENARANDA,                                           04 Cr. 1012 (RPP)
    a/k/a "Cuba,"
FRANCISCO MARTE,                                       **OPINION AND ORDER**
    a/k/a "Julio Aponte,"
    a/k/a "Chico,"
JOSE SALDANA,
    a/k/a "El Puerco," and
MIGUEL PADILLA,
    a/k/a "Mike,"
                                Defendants.
-----------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

       Defendants Hector Penaranda ("Penaranda"), Francisco Marte ("Marte"), Miguel Padilla ("Padilla"), and Jose Saldana ("Saldana") were convicted on June 28, 2006 of conspiracy to commit Hobbs Act robberies, in violation of Title 18 United States Code Section 1951. Padilla filed a motion pursuant to Federal Rules of Criminal Procedure ("Fed. R. Crim. P.") 29 and 33 for a judgment of acquittal, or in the alternative, for a new trial. Defendants Penaranda, Marte, and Saldana join in Padilla's motion.

**BACKGROUND**

       In his motions pursuant to Rules 29 and 33, Padilla argues that (i) a judgment of acquittal must be entered because the evidence against him was insufficient to support the verdict; (ii) a new trial is mandated because the guilty verdict on the Hobbs Act conspiracy charged in Count One of Indictment S6 04 Cr. 1012 (RPP) ("the Indictment") was inconsistent with the jury's decision to acquit him on Counts Three and Four of the

Indictment, which charged him with two attempted Hobbs Act robberies; and (iii) a new trial is required because a note from the jury during the trial asked the Court whether the jurors were in any danger. Padilla Letter Brief for Rules 29 and 33 Motions, dated July 3, 2006 ("Padilla Letter"). Marte joins in Padilla's motions, and also moves for a new trial pursuant to Fed. R. Crim. P. Rule 33 on the additional ground that the Court did not allow him to cross-examine Detective Curcio fully regarding Marte's admission. Marte Letter Brief for Rules 29 and 33 Motions, dated July 3, 2006 ("Marte Letter"). Penaranda joins in the motions of Padilla and Marte as to Count One. Penaranda Letter Brief for Rules 29 and 33 Motions, dated July 6, 2006 ("Penaranda Letter"). Saldana joins the motions of Padilla, Marte, and Penaranda. Saldana Letter Brief for Rules 29 and 33 Motions, dated July 7, 2006 ("Saldana Letter"). For the following reasons, Defendants' Rule 29 and 33 Motions are denied.

**DISCUSSION**

Under Rule 33 of the Federal Rules of Criminal Procedure, a district court may grant a defendant's motion for a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001) (citation omitted). The burden of showing "essential unfairness" is on the defendants who seek to have the result set aside, and the burden must be "sustained not as a matter of speculation but as a demonstrable reality." United States ex rel. Darcy v. Handy, 351 U.S. 454, 462 (1956) (internal citations omitted). A court must exercise its authority to grant a new trial where there is "real concern that an innocent person may have been convicted." United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992).

2

**I.      Defendant's Claim of Insufficient Evidence**

Defendants challenge the sufficiency of the evidence, claiming that in order to acquit the Defendants on all substantive counts while convicting them of conspiracy, the jury "had to reject the testimony of both Alex Isquierdo [sic] and Sixto Marte."  Padilla Letter at 1.  Defendant Padilla claims that "a search of the record comes up with *absolutely nothing else* to support a conviction for conspiracy, including the testimony of the defendant."  Id. (emphasis in original).  After a review of the record, however, the Court determines that Defendants are both factually and legally incorrect, and therefore their motion for a judgment of acquittal is denied.

The Second Circuit states, "[w]hen considering a challenge to the sufficiency of the evidence after a jury has rendered a guilty verdict, we view the evidence in the light most favorable to the government, Jackson v. Virginia, 443 U.S. 307, 619, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979), and construe every permissible inference in the government's favor, United States v. Martino, 759 F.2d 998, 1002 (2d Cir. 1985).  We affirm the conviction so long as 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'  Jackson, 443 U.S. at 319."  U.S. v. Lung Fong Chen, 393 F.3d 139 (2d Cir. 2004).  This standard of deference to the Government is especially important when reviewing a conviction of conspiracy:

> This is so because a conspiracy by its very nature is a secretive operation, and it is a rare case 'where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel.'  The existence of and participation in a conspiracy may be established through circumstantial evidence.  However, 'there must be some evidence from which it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it.'  Finally, we note that 'once a conspiracy is shown to exist, the evidence sufficient to link another defendant to it need not be overwhelming.'

U.S. v. Pitre, 960 F.2d 1112, 1121 (2d Cir. 1992) (internal citations omitted).

Based on these principles, Defendants' challenge to the sufficiency of the evidence fails. The jury found Defendants guilty of conspiracy to commit Hobbs Act robberies, in violation of 18 U.S.C. § 1951, which provides in pertinent part:

> (a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce by robbery . . . or attempts or conspires to do so . . . shall be fined under this title or imprisoned not more than twenty years, or both.
>
> (b) As used in this section –
>
> > 1) The term "robbery means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

(2006). The Government presented convincing evidence, through victim testimony, crime scene evidence, the testimony of two co-conspirators, the items seized during searches of the Defendants' vehicles and apartments, and the testimony of Detectives Clohessy and Curcio, that the Defendants and their co-conspirators worked together in the summer of 2000 to plan the robberies of persons known to be narcotics dealers or members of their families, including "scoping" the victims' apartments, posing as police officers, entering the apartments and restraining and threatening the victims, searching the apartments for narcotics or money from the sale of narcotics, and acting as lookouts and drivers. The Defendants and their co-conspirators were shown to have possession of robbery and police impersonation equipment, including fake wanted posters, walkie-talkies, cell phones, police scanners, police scanner books, NYPD hats, and plastic ties to

use as restraints, as well as guns. There was also testimony from a victim of a robbery, Ester Reyes; eyewitnesses, including Herbert Mitchell and Gino Almonte; and crime scene and investigating detectives, including Detectives Velazquez, Henry, Noya, O'Keefe, and Curcio. From this proof, the jury could conclude beyond a reasonable doubt that the Defendants had conspired to commit robberies of narcotics dealers or the relatives of narcotics dealers by forming an agreement or understanding to commit the robberies, that they had knowingly participated in the conspiracy, and that an overt act in furtherance of the conspiracy was committed by one or more of the conspirators.

The Government may prove its case "entirely by circumstantial evidence so long as guilt is established beyond a reasonable doubt." United States v. Sureff, 15 F.3d 225 (2d Cir. 1994); United States v. Libera, 989 F.2d 596 (2d cir. 1993). Here, in addition to the strong circumstantial evidence, the Government elicited testimony from co-conspirators Alex Izquierdo and Sixto Marte, who testified about each of the Defendants' knowing involvement in the conspiracy and the roles that each Defendant played in the attempted robberies of narcotics dealers or the relatives of narcotics dealers at Pinehurst Avenue, 161st Street, Pittman Avenue, and Tinton Avenue. It is well-settled that a court should "defer to the jury's assessment of witness credibility and the jury's resolution of conflicting testimony . . . even though each of the government witnesses . . . testified pursuant to cooperation agreements with the Government and even though their testimony was pock-marked with inconsistencies." U.S. v. Glenn, 312 F.3d 58, 64 (2d Cir. 2002) (internal citations omitted). Here, the testimony of these witnesses, considered either alone or in conjunction with corroborating testimony during trial, was sufficient to support the Defendants' convictions on the conspiracy count. Defendants' motions for a

judgment of acquittal based on the sufficiency of the evidence are denied.

**II.     Defendant's Claim of Inconsistent Verdicts**

Defendants move for a judgment of acquittal, asserting that the verdicts are inconsistent. Defendants claim that because the jury acquitted all of the defendants of the substantive Hobbs Act attempted robbery counts – Counts Two, Three, and Four of the Indictment – "the jury had to reject the testimony of both Alex Isquierdo [sic] and Sixto Marte," and it is thereby "simply inconsistent to accept [the testimony] for purposes of the conspiracy count." Padilla Letter at 1-2.

In the instant case, the jury's decision to convict the Defendants of the conspiracy count and acquit the Defendants of the substantive counts is not inconsistent. To sustain its burden of proof with respect to the conspiracy count, the Government had to prove beyond a reasonable doubt that (i) there was an agreement or understanding to violate Section 1951 of the United States Code by robbing persons believed to be narcotics dealers; (ii) the Defendant knowingly become a member of the conspiracy; and (iii) one of the conspirators committed an overt act in furtherance of the conspiracy. The crime of conspiracy, however, is an independent offense that is separate and distinct from the substantive crimes. Indeed, the jury in this case was instructed that "you may find a defendant guilty of the crime of conspiracy to commit an offense even though the substantive crime that was the object of the conspiracy – that is, the robbery itself – was not actually committed. Congress has deemed it appropriate to make conspiracy standing alone a separate crime, even if the conspiracy is not successful." See Trial Transcript ("Tr."), June 27, 2006, at 2170-71.

In the instant case, the Defendants on trial were not shown to have been the

conspirators who posed as police officers or who carried guns; rather, the evidence was that they performed supportive roles to the other co-conspirators in one or more of the attempted robberies – helping scope the premises, driving the getaway car, and acting as lookouts. The substantive counts in the Indictment did not cover many of the overt acts taken by conspirators in furtherance of the conspiracy. For instance, the testimony of co-conspirators Alex Izquierdo and Sixto Marte described other overt acts, including but not limited to details regarding a robbery of a narcotics "stash" house in the vicinity of Tinton Avenue in the Bronx in early August 2000 ("Tinton I"), an attempted robbery of the Tinton Avenue stash house in mid-August 2000 ("Tinton II"), and an attempt to rob an apartment in Manhattan in October 2000 ("the October 2000 robbery").

The jury did not have to find that each Defendant performed every overt act beyond a reasonable doubt, but rather that a conspirator performed an overt act in furtherance of the conspiracy and that there was "some evidence from which it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it." U.S. v. Sanchez Solis, 882 F.2d 693, 696 (2d Cir. 1989) (internal citations omitted). Here, the jury could have found the Defendants guilty of the essential elements of a conspiracy beyond a reasonable doubt, even if the jury did not find the Defendants guilty of the substantive counts. Therefore, the jury's verdict was not inconsistent, and Defendants' motions for an acquittal or a new trial are denied.

Moreover, even if the verdicts could be deemed inconsistent, "[c]onsistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment." U.S. v. Powell, 469 U.S. 57, 62 (1984) (internal citations omitted). In

Powell, the United States Supreme Court reaffirmed the rule of Dunn v. U.S., 284 U.S. 390 (1932), that "[the] most that can be said . . . is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt." Dunn, 284 U.S. at 393.

> Inconsistent verdicts therefore present a situation where 'error,' in the sense that the jury has not followed the court's instructions, most certainly has occurred, but it is unclear whose ox has been gored. Given this uncertainty, and the fact that the Government is precluded from challenging the acquittal, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course. . . . The fact that the inconsistency may be the result of lenity, coupled with the Government's inability to invoke review, suggests that inconsistent verdicts should not be reviewable.

Powell, 469 U.S. at 65-66.[1] The Court continued its analysis:

> We also reject, as imprudent and unworkable, a rule that would allow criminal defendants to challenge inconsistent verdicts on the ground that in their case the verdict was not the product of lenity, but of some error that worked against them. Such an individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake.

Id. at 66. Thus, the Defendants may not challenge their convictions on the ground that the verdicts are inconsistent, and their motions for a new trial are denied.

## III. Defendant's Claim Regarding the Juror's Note

Finally, Defendants move for a new trial because they assert that a jury note received by the Court during the course of the trial[2] demonstrated that some of the jurors "had discussed the violent nature of the evidence and determined that the defendants might be dangerous men who would retaliate against them for an unfavorable verdict."

---

[1] In fact, in view of time constraints voiced by several jurors, lenity is a likelihood in this case.
[2] The note was received during the luncheon recess after the Government had presented its case. See Tr. at 1772.

8

Padilla Letter at 2. Defendants argue that a new trial should be granted because the Court should have declared a mistrial or conducted a special voir dire to determine whether the Court's instructions had been violated. Id.

The jury note submitted on June 22, 2006, labeled "Court Exhibit 3," reads as follows:

> Judge Patterson –
> Some of us have concerns regarding safety after the trial.
> In your experience – have there been issues/problems regarding the safety of jurors and/or families?
> Thank you.

Court Exhibit 3. Mr. Stolar, attorney for Miguel Padilla, moved for a mistrial, with the other defense attorneys joining in the motion. Tr. at 1773-74. The Court listened to defense counsel at some length before denying the motion for mistrial. Id. Mr. Stolar then asked if a special voir dire of the individual jurors would be appropriate, id. at 1774, but the Court determined that the note "doesn't mean they've made up their minds to convict people," id. at 1775, and that a cautionary instruction to the jury was the appropriate course of action:

> THE COURT: I've gotten a note from the jurors saying that several of you have concerns regarding the safety of jurors and/or their families and asking me whether in my experience there have been prior problems of this sort.
>
> And my answer is no. If there are cases where we think in any way the jurors or their families' lives or well being would be threatened, we have anonymous jurors in those cases where there's any suspicion of that. And in my experience there's never been any threat in my cases of any sort to jurors or their families.
>
> Now, it concerns me a little bit, because I want to be sure that you've all – you haven't heard all the evidence. There's evidence that still has to be brought before you. And it's important that you have an open mind and consider all the evidence before you make up your mind about the guilt or innocence of the defendants. So keep an open mind.

9

And let's proceed and hear the other side of the case.

Id. at 1776.

First, Mr. Stolar's conclusion that the note was "evidence of the jurors disregarding the Court's instructions that they not discuss the case until all of the evidence was in" or evidence that the jurors "had determined that the defendants might be dangerous men" does not follow from the note. The jurors were already aware that the Defendants might be dangerous men, as they were charged with conspiracy to rob drug dealers, attempted robberies, and possession of guns during these robberies. That the jury disregarded the Court's instructions is pure speculation; the note only showed that the jury had heard the evidence. The jurors asked the Court about its experiences with juror safety after the trial. Court Exhibit 3 does not indicate that the jurors had already made up their minds about the guilt or innocence of the defendants. The jury was carefully selected and had dutifully listened to the evidence thus far presented in the case. Defendants have not demonstrated that the jury's expression of concern in its note undermined its ability to determine the case fairly and impartially.

In addition, the Court's decision to give the jury a special instruction but not conduct a voir dire was appropriate. "[D]ecisions as to when to question jurors and the manner of that inquiry are generally left to the trial judge's broad discretion." U.S. v. Ruggiero, 928 F.2d 1289, 1301 (2d Cir. 1991) (internal citations omitted). The trial court, which "observ[es] the jury on a day to day basis . . . is in the best position to sense the atmosphere of the courtroom as no appellate court can on a printed record." U.S. v. Barnes, 604 F.2d 121, 141 (2d Cir. 1979). In many instances, "the court's reiteration of its cautionary instructions to the jury is all that is necessary." U.S. v. Thai, 29 F.3d 785,

803 (2d Cir. 1994) (internal citations omitted). Therefore, the Court here had broad discretion to pass on allegations of juror prejudice by giving a special instruction to the jury to keep an open mind and consider all the evidence.

Moreover, the cases cited by defense counsel in his reply letter do not persuade the Court otherwise. Padilla Reply Letter Brief for Rules 29 and 33 Motions, dated July 28, 2006 ("Padilla Reply Letter"). In U.S. v. Thomas, the juror asked a marshal whether the jurors had anything to fear from the defendants. 632 F.2d 837, 841 (10th Cir. 1980). The trial court in that case denied the defendant's motion for mistrial, determining that the juror's conversation did not pose a realistic risk of prejudice so as to justify a mistrial. Id. The court of appeals upheld the trial court's decision, saying that they were unable to perceive a prejudicial error in the trial court's manner of handling the matter," id., and that "[t]he judge's findings show that he weighed the countervailing circumstances with the greatest of care in reaching a conclusion." Id. at 842. As in the instant case, the trial court in Thomas promptly gave a cautionary instruction to the jury, and the court of appeals determined that the judge had exercised sound discretion in denying the motions. Id. Therefore, Thomas supports the Court's decision in this case, which was made after careful consideration of the circumstances of the jury's note.

In U.S. v. Morrone, a juror was excused after remarking that "[i]t looks like the Mafia is here." 502 F. Supp. 983, 1003 (E.D. Pa. 1980). The court in that case questioned all the members of the jury panel, determined there was no prejudice, and permitted the selection process to continue. Id. Because the suggestion of the "Mafia" could prejudice the jury, voir dire was appropriate. In the instant case, however, there was no such suggestion of prejudice in the juror's note.

There is no requirement that the judge conduct a voir dire, and <u>Morrone</u> cites the statement of a court of appeals judge that "[t]he trial court is obviously in a better position to observe the impact of premature jury discussions of guilt, and to make a considered judgment as to the effectiveness of a cautionary instruction." <u>Id</u>., citing <u>U.S. v. Pantone</u>, 609 F.2d 675 (3d Cir. 1979). Thus, the district court has broad discretion to determine the impact of a jury's concerns or any discussions the jurors might have had, and it was well within this Court's discretion to decide against conducting a voir dire but instead to give a curative instruction. Therefore, Defendants' motions for a new trial are denied.

IV.     **Marte's Motion Regarding Cross-Examination of Detective Curcio**

Defendant Marte also moves for a new trial on the additional grounds that "the Court's refusal to allow Mr. Marte to cross-examine [former] Det. Curcio on Mr. Marte's alleged unredacted 'confession' or to redact the 'confession' in the manner suggested by counsel at trial" was reversible error that "deprived Mr. Marte of due process, the right to present a defense, and the right to confrontation under the Fifth and Sixth Amendments to the United States Constitution." Marte Letter at 1.

After he was arrested in a car with Defendant Saldana and two other men and advised of his Miranda rights on October 9, 2000, Marte made the following admission to former Detective Curcio:

> We were going up to Washington Heights. A woman wanted her husband done. We were supposed to get $40,000.

Government Letter Brief, dated June 21, 2006 ("6/21/06 Gov't Letter"). At trial, the Court permitted the Government to introduce into evidence a redacted version of

12

the admission (using the first-person singular in place of "we").  Marte does not articulate in his Rule 33 motion how the exclusion of the unredacted version of his statement deprived him of due process, but defense counsel for Marte, Lloyd Epstein ("Epstein"), argued at trial that his cross-examination would be undermined by not being able to cross-examine former Detective Curcio about the unredacted statement, particularly as to whether he had received the information about the proposed robbery from informant Kenny Delgado.  See Tr. at 1591, 1656-58, 1692-94.

Permitting defense counsel for Marte to cross-examine former Detective Curcio without restriction, however, would have created a problem under Bruton.  See U.S. v. Bruton, 391 U.S. 123 (1968) (holding that a defendant is deprived of his Confrontation Clause rights when a co-defendant's statement naming the defendant as a participant in the crime is admitted at their joint trial).  See also Crawford v. Washington, 51 U.S. 36 (2004).  Accordingly, in order to ensure that Epstein's cross-examination was not materially hampered by the redaction, the Court allowed Epstein to conduct a special voir dire examination of Detective Curcio outside the jury's presence.  See Tr. at 1687-91, 1705-09.  After the voir dire, Epstein again raised questions about his ability to adequately cross-examine Detective Curcio on his credibility.  Id. at 1713-14.  After careful consideration, the Court determined that Epstein was free to raise all of his questions on cross-examination of Detective Curcio:

> THE COURT:  You raised the question.  You raised the issues, and you're free to do all that.  You're free to do all the questioning him about his notes and refreshing his recollection as to whether ADA McGruder was present, but not get into anything that implicates Mr. Saldana.

Id. at 1717.  Epstein went on to cross-examine Detective Curcio and was able to cover all of the points he had brought up before and after the voir dire of Detective Curcio.  See id.

at 1724-46. Marte's Sixth Amendment rights under the Confrontation Clause to cross-examine witnesses and present a defense were not hindered by the introduction of the redacted version of the statement.

Furthermore, "[t]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." U.S. v. Crowley, 318 F.3d 401, 417 (2d Cir. 2003), quoting Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). A defendant may get relief on appeal "[o]nly when this broad discretion [to restrict cross-examination] is abused." Crowley, 318 F.3d at 417. "Further, under Rule 403, the district court may exclude even relevant evidence if it finds that the 'probative value [of the testimony] is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" Crowley, 318 F.3d at 417, quoting Fed. R. Evid. 403 and United States v. Flaharty, 295 F.3d 182, 191 (2d Cir. 2002).

Here, admitting an unredacted version of Marte's statement to Detective Curcio would have presented a Bruton problem. The voir dire examination demonstrated that Epstein could cross-examine Detective Curcio on the issues he raised in Marte's defense without implicating any of the other Defendants. It was therefore within the Court's broad discretion in regulating cross-examination to conclude that the prejudicial impact of implicating other Defendants in Marte's admission, particularly Jose Saldana, outweighed the minimal probative value of permitting the jury to hear the unredacted

statement. Marte's Rule 33 motion for a new trial is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motions for a new trial or acquittal pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure are denied.

IT IS SO ORDERED.

Dated: New York, New York
August 17, 2006

Robert P. Patterson, Jr.
U.S.D.J.

Copies of this Opinion & Order sent to:

Michael J. Garcia, United States Attorney
Southern District of New York
Attn: Marcus Asner and Samidh Guha, A.U.S.A.
One St. Andrew's Plaza
New York, NY 10007
Tel:    212-637-2483
Fax:    212-637-2404

For Defendants:

Attorney for Hector Penaranda:
Lawrence K. Feitell, Esq.
225 Broadway, Suite 2020
New York, NY 10007
Tel:    212-571-5710
Fax:    212-571-5711

Attorney for Francisco Marte:
Lloyd Epstein, Esq.
Epstein & Weill
225 Broadway, Suite 1203
New York, NY 10007
Tel:    212-732-4888
Fax:    212-732-6703

Attorney for Jose Saldana:
Peter Guadagnino, Esq.
45 South Avenue, West
Cranford, NJ 07016
Tel:    201-755-5452
Fax:    908-276-0547

Attorney for Miguel Padilla:
Martin R. Stolar, Esq.
351 Broadway, 4th Floor
New York, NY 10013
Tel:    212-219-1919
Fax:    212-941-0980